# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Gerald Durovka,<br><br>    Plaintiff,<br><br>v.<br><br>Frontline Asset Strategies, LLC,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Gerald Durovka ("Gerald"), is a natural person who resided in Steger, Illinois, at all times relevant to this action.

2. Defendant, Frontline Asset Strategies, LLC ("FAS"), is a Minnesota limited liability company that maintained its principal place of business in Roseville, Minnesota, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

1

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, FAS collected consumer debts.

7. FAS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of FAS's revenue is debt collection.

9. FAS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. At all relevant times, FAS was engaged in "trade" and "commerce" as defined by 815 ILCS 505/1(f).

11. As described, *infra*, FAS contacted Gerald to collect a debt that was incurred primarily for personal, family, or household purposes.

12. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

13. Gerald is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14. In early 2022, Gerald became a subscriber to T-Mobile's cellular service.

15. Gerald's cellular service agreement with T-Mobile obligated Gerald to pay $118.00 a month, including taxes, to T-Mobile.

16. For unknown reasons, in March 2022, T-Mobile unilaterally placed device insurance on Gerald's account ("Unauthorized Extra Charges") without Gerald's authorization.

17. Within days, Gerald immediately notified T-Mobile that he did not approve the Unauthorized Extra Charges and promptly demanded T-Mobile remove it from his account.

18. Despite this, T-Mobile neglected to remove the Unauthorized Extra Charges from Gerald's monthly bill.

19. Gerald continued to pay T-Mobile the contracted upon $118.00 each month and spent considerable time and effort regularly objecting to the Unauthorized Extra Charges directly to T-Mobile.

20. For example, on every payment Gerald mailed in, Gerald wrote notes to T-Mobile indicating why he was only paying $118.00 and demanding them to remove the Unauthorized Extra Charges from his account. *See* Exhibit A.

21. Despite Gerald's clear instructions to cancel the Unauthorized Extra Charges and provide him with a credit, T-Mobile neglected to do so and, in fact, assigned the Unauthorized Extra Charges to a collection agency ("Convergent") for collection.

22. In response to T-Mobile sending the account to Convergent, Gerald spent considerable additional time providing Convergent with detailed notes, financial records, and copies of the T-Mobile contract evidencing the Unauthorized Extra Charges were unauthorized and not owed.

23. Rather than address his concerns, Convergent choose to do nothing and ignored all of Gerald's letters and pleas.

24. In fact, immediately after Gerald notified Convergent of the facts, for reasons better known by Convergent and FAS, T-Mobile reassigned the collection account containing the Unauthorized Charges to FAS for collection.

25. Consistent with Convergent's collection attempts, FAS began also demanding Gerald pay FAS money to satisfy the Unauthorized Extra Charges.

26. Despite FAS attempting to collect the Unauthorized Extra Charges, Gerald continued to attempt to resolve T-Mobile's errors directly with T-Mobile by, inter alia, visiting several T-Mobile brick and mortar locations.

27. During one such visit to a T-Mobile store, the T-Mobile employee ("Employee") lamented Gerald's situation with him and in disgust with Employee's employer, shook his head while indicating it would be almost impossible for Gerald to get the proper attention of T-Mobile and also added that Employee regularly fields similar complaints from other T-Mobile subscribers.

28. Additionally, Gerald spent considerable time and money, communicating with FAS including providing FAS with a significant amount of information evidencing that T-Mobile was attempting collect more than it was contracted to collect and formally disputed the debt to FAS.

29. FAS's policies and procedures for processing disputes received from consumers fail to reasonably comply with its burdens required by Federal Law resulting in the needless harassment of consumers like Gerald.

30. FAS's policies and procedures relating to handling consumer disputes violate the FDCPA.

31. As a result of its policies and procedures, FAS failed to conduct a reasonable investigation into Gerald's dispute.

32. Moreover, in response, FAS responded to Gerald's dispute, and demand for validation, by falsely indicating that FAS verified that the Unauthorized Extra Charges were valid.

33. The account is not valid, the debt is not owed.

34. FAS is attempting to collect a debt from a Gerald that it knows, or has reason to know, is not owed.

35. Throughout the last 12 months, Gerald has spent dozens of hours addressing T-Mobile's fraudulent addition of the Unauthorized Extra Charges with FAS, spent money out of pocket on postage and stationery, and therefore has suffered concrete harm by FAS's refusal to

properly handle Gerald's dispute and continued collection attempts of the Unauthorized Extra Charges.

36. Despite sending dozens of pages of letters to T-Mobile, Convergent and FAS, the companies refuse to correct their errors.

37. As a result, Gerald was forced to retain counsel and, as a result, incurred fees relating to that representation.

38. Gerald has also suffered concrete harm as FAS's conduct caused Gerald to experience loss of consortium and has otherwise negatively impacted his relationship with his wife.

39. Gerald has also suffered concrete harm as a result of FAS's actions, including but not limited to, invasion of privacy, the unique aggravation that accompanies unwanted and false collection letters and allegations, emotional distress, and libel.

## **COUNT ONE**

### **Violation of the Fair Debt Collection Practices Act**

40. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 39 above as if fully set forth herein.

41. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## **COUNT TWO**

### **Violation of the Fair Debt Collection Practices Act**

42. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 39 above as if fully set forth herein.

43. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

44. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 39 above as if fully set forth herein.

45. Defendant violated 15 U.S.C. § 1692g by continuing its efforts to collect the debt without first properly validating the debt pursuant to Plaintiff's written request.

## COUNT FOUR

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

46. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 39.

47. The ICFA states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

48. It was unfair for Defendant to attempt to collect the debt in the manner in which it did.

49. Defendant violated 815 ILCS 505/2 through the unfair and deceptive nature of its conduct in relation to Plaintiff.

50. The ICFA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

51. The ICFA further states:

> "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic

damages or any other relief which the court deems proper." 815 ILCS 505/10a.

52. Plaintiff has suffered significant actual damages resulting from Defendant's unlawful practices, including both out of pocket expenses, as well as emotional pain and suffering including but not limited to the loss of consortium.

## **JURY DEMAND**

53. Plaintiff demands a trial by jury.

## **PRAYER FOR RELIEF**

54. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Defendant for actual and punitive damages as provided under 815 ILCS 505/10a(a).

    c. Judgment against Defendant for costs and reasonable attorney fees as provided under 815 ILCS 505/10a(c).

    d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date:   March 7, 2023

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*